# LIBERTY MUTUAL INSURANCE COMPANY, PLAINTIFF, v. RANDI K. MASSEY AND CAROL MASSEY, DEFENDANTS.

Superior Court of New Jersey
Chancery Division Atlantic County

Decided January 18, 1983.

*William P. Busch, Jr.* for plaintiff (*Cole & Cole,* attorneys).

*Abigail Sayegh* for defendants (*Goldenberg, Mackler & Sayegh* attorneys).

GIBSON, J.S.C.

This case involves a determination of coverage under the uninsured motorist provisions of an automobile liability policy. At issue is whether an insured who is injured as a result of a collision with a second vehicle may seek recovery under her own policy when the second vehicle, although insured generally, is not being operated with the knowledge, consent or permission of its owner. There is a secondary issue as to whether coverage is alternatively available based on the status of the accident as a "hit-and-run" case.

Based on the stipulated facts it appears that plaintiff's insured, Carol Massey, was operating her vehicle on June 19, 1981, at which time she was involved in a collision with a second vehicle owned by Joseph Danley. The latter vehicle was being operated without the knowledge or consent of the owner, and its driver fled the scene prior to being able to be identified. At the time of the accident the Danley vehicle was insured through a policy with Safeco Insurance Company. When Massey pursued a damage claim with Danley's carrier, however, the company acknowledged coverage generally but took the position that it had no responsibility, given the operation of the vehicle without the owner's knowledge or consent. On June 3, 1982 Massey filed for arbitration pursuant to the uninsured motorist provision of her own policy, claiming that the Danley vehicle was uninsured and/or a hit-and-run case. Her carrier denied responsibility under its policy, brought suit here and obtained a preliminary restraint of the arbitration proceeding. The matter is now before the court for final disposition.

■ The primary issue to be determined is whether the uninsured motorist provision of the policy in effect for the Masseys is operative under the above set of facts. More specifically, is uninsured motorist coverage available to an insured who is injured as a result of the actions of a third party operating a vehicle which, although insured, is being driven without the consent and/or permission of its owner? Alternatively, is such coverage available when the driver of the second vehicle leaves the scene of the accident and cannot be identified? Based on the stipulated facts, the appropriate statutory references and the applicable case law, it is the conclusion of this court that the answer to these questions should be yes.

The automobile liability policy issued by plaintiff and applicable to the Massey vehicle contains provisions dealing with uninsured motorists and defines an "uninsured highway vehicle" as one with no bodily injury, liability insurance policy applicable at the time of accident, or with respect to which there is a bodily injury liability policy but the company writing the same denies coverage thereunder. The definition also includes a so-called hit-and-run vehicle, which term is further defined as a highway vehicle which

> . . . causes bodily injury to an insured arising out of physical contact of such vehicle with the insured or with an automobile which the insured is occupying at the time of the accident, provided: (a) there cannot be ascertained the identity of either the operator or the owner of such a vehicle; . . . .

On the basis of these provisions, plaintiff carrier argues that the Danley vehicle was not "uninsured" because there was a valid policy of insurance in effect which covered it at the time of the accident. It further contends that this was not a "hit-and-run" case because the owner of the vehicle could be and was ascertained. Although both of these positions appear to represent fair readings of the policy language, that language must be interpreted here against the backdrop of the applicable statutory mandates as well as the case law interpreting those mandates.

One such mandate is *N.J.S.A.* 17:28–1.1. That statute, in its basic terms, requires every automobile liability policy issued in this State to include coverage providing for payment of all or part of any sum which the insured shall be legally entitled to recover as damages from the operator or owner of an uninsured automobile or hit-and-run automobile as defined in *N.J.S.A.* 39:6–78. The latter statute is part of the Motor Vehicle Security-Responsibility Law and provides as follows:

> When the death of, or personal injury to, any person arises out of the ownership, maintenance or use of a motor vehicle in this State on or after April 1, 1955, but the identity of the motor vehicle and of the operator and owner thereof cannot be ascertained or it is established that the motor vehicle was at the time said accident occurred, in the possession of some person other than the owner without the owner's consent and that the identity of such person cannot be ascertained, any qualified person who would have a cause of action against the operator or owner or both in respect to such death or personal injury may being an action therefor against the director [of Motor Vehicles] in any court of competent jurisdiction. . . .

An interpretation of the policy issued by plaintiff within the framework of the legislation just mentioned requires that any provision which purports to be more restrictive be judicially modified to conform to the statutory standard. *Beck v. Ohio Cas. Ins. Co.,* 73 *N.J.* 185 (1977); *Selected Ins. Co. v. Zullo,* 48 *N.J.* 362 (1966); *Fernandez v. Selected Risks Ins. Co.,* 163 *N.J.Super.* 270, aff'd 82 *N.J.* 236 (1980); *Willis v. Security Ins. Group,* 104 *N.J.Super.* 410 (Ch.Div.1968), aff'd o.b. 53 *N.J.* 260 (1969). When appropriate, the courts of this State have not hesitated to strike provisions of automobile liability policies which do not conform to relevant statutory mandates, including those requiring uninsured motorist coverage. *Beck v. Ohio Cas. Ins. Co., supra.*

Given these standards, one may legitimately question whether the Danley vehicle is, in reality, "insured" within the framework of the coverage mandated by *N.J.S.A.* 17:28–1.1. In the sense that there was a valid liability policy covering the vehicle generally, the answer is yes. On the other hand, it is equally clear that under the circumstances of this accident neither the owner of the second vehicle nor the carrier would bear responsi-

bility. *McClain v. Jones*, 121 *N.J.Super.* 38 (App.Div.1972). Omnibus coverage which normally provides protection to non-owner drivers applies only where the use is with the "express or implied consent of the insured...." *N.J.S.A.* 39:6–46(a) (repealed by *L.*1979, *c.* 16); *N.J.S.A.* 39:6B–1; *State Farm, etc., Ins. Co. v. Simmons' Estate*, 84 *N.J.* 28, 40 (1980); *Keystone Ins. Co. v. Atlantic Chrysler Plymouth*, 167 *N.J.Super.* 353, 357 (Law Div.1979). By stipulation it is admitted that no such consent was given here. Nor is this the type of situation where the carrier for the second vehicle denies liability simply because of a disputed question of fault.

A question similar to that being considered here was presented in the case of *Travelers Indem. Co. v. Mongiovi*, 135 *N.J.Super.* 452 (App.Div.1975). But for the hit-and-run aspects, the factual setting there was basically the same as the one now being reviewed. The issue, however, was not one of consent but rather a failure on the part of the second driver to cooperate with his insurer. The carrier for that vehicle disclaimed and the injured party sought relief through the uninsured motorist coverage on his own automobile policy. His carrier declined on the basis that the other vehicle was not "uninsured." When the matter was considered by the court, not only was the right of the insured to recover under his own policy upheld, it was also determined that it was not necessary to first litigate with the second carrier the validity of the disclaimer.

A similar result was reached where the carrier for an otherwise insured vehicle became insolvent. *State Farm Mut. Auto. Liab. Ins. Co. v. Kiser*, 168 *N.J.Super.* 230 (App.Div.1979). Recovery was permitted against the victim's own carrier under the UM provision despite the fact that there was potential recovery against the New Jersey Property Liability Guarantee Association. Although distinguishable on the basis of policy language which specifically refers to insolvency, the case is further support for the proposition that one need not exhaust or even undertake any steps to recover from third parties when faced

with what realistically represents a lack of effective alternate coverage. *Id.* at 235.

Although there do not appear to be any New Jersey cases which directly decide the question being examined here, the Supreme Court of North Carolina addressed the issue and arrived at the same conclusion reached here. *Buch v. United States Fid. & Guar. Co.,* 265 *N.C.* 285, 144 *S.E.*2d 34 (1965). The facts of that case are similar to those present here, although the driver of the second vehicle was known and a judgment was obtained against him. The victim could not satisfy the judgment against the driver and had no recourse under the policy covering the owner because the driver was operating without the consent or permission of the owner. The court ruled that recourse was available under the UM coverage of the victim's own automobile policy, since the other vehicle could not be considered "insured" under the circumstances. For a treatment of out-of-state authorities, see, generally, *Appleman, Insurance Law and Practice,* § 5076 (1981).

The result in North Carolina and the relevant cases decided in this State reflect a liberality in favor of achieving maximum protection for the innocent victims of automobile accidents. There is no question that this approach is the policy of this State and should be followed here. *Motor Club of America Ins. Co. v. Phillips,* 66 *N.J.* 277, 283 (1974); *McFarland v. Motor Club of America Ins. Co.,* 120 *N.J.Super.* 554 (Ch.Div.1972). It must be remembered that prior to the legislation mandating UM coverage, *N.J.S.A.* 17:28–1.1, it was necessary for victims of accidents involving uninsured vehicles or hit-and-run drivers to pursue their claims against the Unsatisfied Claim and Judgment Fund. The stated purpose of the later statute was not only "to provide greater protection for the victims of uninsured motorists," but also to make recourse to the Fund unavailable to any insured under an automobile policy furnishing UM coverage. *Ibid.* The intent clearly included giving much needed relief to the Fund. *Gorton v. Reliance Ins. Co.,* 77 *N.J.* 563, 571 (1978); *Motor Club of America Ins. Co. v. Phillips, supra* 66 *N.J.* at 283–285; see,

generally, Stanton, "Protection Against Uninsured Motorists in New Jersey," 3 *Seton Hall L.Rev.* 19 (1971). Given this history, the public policy related above and the prior case law in the area, it is clear that the vehicle in question should not be considered "insured" for purposes of determining the availability of UM coverage.

The second issue to be determined is whether coverage should also be available under the hit-and-run provision of defendant's policy. *N.J.S.A.* 17:28–1.1 incorporates by reference the provisions of *N.J.S.A.* 39:6–78 entitled " 'Hit-and-run' cases." That statute was recited earlier. Unlike the language contained in the policy issued by plaintiff, recovery is triggered under the statute where the identity of the operator and the owner cannot be ascertained "or it is established that the motor vehicle was at the time said accident occurred in the possession of some person other than the owner without the owner's consent and that the identity of such person cannot be ascertained...." *Ibid.* *N.J.S.A.* 17:28–1.1 was obviously designed to eliminate the need for resort to the Unsatisfied Claim and Judgment Fund in such a setting by requiring the availability of UM coverage. It is also clear that the policy language here is much stricter than that contained in the statute. The net result, if the carrier's position is accepted, is that despite her UM coverage the insured would be required to pursue her claim against the Fund. Certainly this is not a result which is consistent with the stated purposes of *N.J.S.A.* 17:28–1.1 and the public policy previously referred to. See, generally, Stanton, "Protection Against Uninsured Motorists in New Jersey," 3 *Seton Hall L.Rev., supra.* Such a result should not be permitted to stand. The response of this court is to reform the policy involved to the extent necessary to conform with the statutory mandated coverage. *Perez v. American Bankers Ins. Co. of Florida,* 81 *N.J.* 415, 419 (1979); *Motor Club of America Ins. Co. v. Phillips, supra.* The net effect here is to provide an alternative basis for resort by the insured to the UM coverage under her policy.

In summary, it is the view of this court that despite the existence of a valid insurance policy covering the Danley vehicle at the time of the accident, the fact that it was being operated without the knowledge or consent of its owner made it "uninsured" for purposes of permitting resort to the UM coverage under the policy issued by plaintiff. An alternative basis for the same conclusion is the classification of the accident as a "hit-and-run" case as that term has been defined by *N.J.S.A.* 39:6–78. To the extent that plaintiff's policy is inconsistent with this result, it should be modified. Under the circumstances, defendant's pursuit of the remedies available under her own uninsured motorist coverage was appropriate and the stay of arbitration previously granted to plaintiff should be removed. Judgment should be entered accordingly.