703 A.2d 360

DANIEL D. O'CONNELL, PLAINTIFF–APPELLANT, v. NEW JERSEY MANUFACTURERS INSURANCE COMPANY AND PARKWAY INSURANCE COMPANY, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued November 6, 1997—Decided December 12, 1997.

Before Judges MUIR, Jr., KESTIN and CUFF.

*Joel L. Pitman* argued the cause for appellant (*Pitman, Pitman and Mindas* and *Budd, Larner, Gross, Rosenbaum, Greenberg & Sade,* attorneys; *Mr. Pitman* and *Donald P. Jacobs,* on the brief).

*Brian G. Steller* argued the cause for respondent New Jersey Manufacturers (*Connell, Foley & Geiser*, attorneys; *Mr. Steller*, of counsel; *Jeffrey K. Lehrer*, on the brief).

*Eugene P. Franchino* argued the cause for respondent Parkway Insurance (*Miriam R. Rubin*, attorney; *Mr. Franchino*, on the brief).

The opinion of the court was delivered by

MUIR, Jr., J.A.D.

We are called upon, for the second time, to resolve plaintiff's entitlement to arbitrate an insurance coverage claim arising out of a January 13, 1994, automobile accident. In *New Jersey Mfrs. v. O'Connell*, 300 *N.J.Super.* 1, 692 *A.*2d 51 (App.Div.1997) (*O'Connell I*), we ruled plaintiff was entitled to arbitrate his underinsured motorist (UIM) claim as an insured under NJM's policy. Now, in this declaratory judgment action plaintiff filed more than two years after the accident date, we must resolve the issue of plaintiff's claim for uninsured motorist (UM) coverage for the same accident under policies issued by both NJM and Parkway Insurance Company.

The trial judge entered judgment dismissing plaintiff's complaint to compel UM arbitration. The judge concluded, after a plenary hearing, plaintiff failed to prove he made all reasonable efforts to identify the motor vehicle and its owner, or operator, as required by *N.J.S.A.* 39:6–78. Plaintiff's threshold contention on appeal is that compliance with the statutory requisites is an issue for the arbitrator and not the court. Alternatively, he contends the trial judge's findings and conclusions are against the weight of the evidence. We affirm.

On January 13, 1994, O'Connell sustained injuries in a two-car accident. Ann Harpootlian was the driver of the second car. The accident occurred while O'Connell was road testing a 1987 GMC sport utility vehicle (SUV) for his employer, Jim Curley Pontiac–GMC Truck. State Leasing Corporation owned the SUV and had leased it to Hovson's Incorporated. As O'Connell drove the SUV north on Route 9 in Lakewood, Harpootlian's automobile collided

with the SUV as she attempted to go south on Route 9 from a gas station driveway. Both drivers acknowledged there was a large truck along the curb in front of the gas station at the time. A police report indicated O'Connell complained of pain, refused medical attention, and drove away in the SUV.

At the time of the accident, O'Connell carried $300,000 in UM insurance coverage for his personal vehicle through Parkway. His policy also provided $300,000 in UIM coverage. Curley Pontiac had insurance, but it provided no UIM coverage to its employees. New Jersey Manufacturers (NJM) insured the GMC with Hovson's, a named insured. The NJM policy provided $1 million UM coverage and $1 million UIM coverage. Hartford Insurance Company insured the alleged tortfeasor, Harpootlian, under a policy with $250,000 liability limits.

On April 27, 1995, Hartford offered O'Connell the full amount of Harpootlian's coverage in return for a release of his claims against Harpootlian. O'Connell's counsel then advised NJM in writing of the offer to settle and O'Connell's intention to accept the offer. *See Longworth v. Van Houten,* 223 *N.J.Super.* 174, 538 *A.2d* 414 (App.Div.1988). The letter, similar to one sent to Parkway the same date, provided in part:

> I know that you are aware that your options are to either permit Mr. O'Connell to accept the third party offer [of Hartford], in which case any right of subrogation [NJM] has will be extinguished or in the alternative, [NJM] may pay the $250,-000.00 to Mr. O'Connell in return for his right to subrogate to his rights against Harpootlian and Hartford.

The ensuing events relevant to *O'Connell I* are set out in the reported decision and need not be reiterated here. *O'Connell I* was precipitated by NJM's December 13, 1995, declaratory judgment complaint that claimed *Aubrey v. Harleysville Ins. Cos.,* 140 *N.J.* 397, 658 *A.2d* 1246 (1995), precluded plaintiff's entitlement to arbitrate his UIM claim under NJM's policy. On May 24, 1996, the trial judge entered a judgment which precluded arbitration. O'Connell appealed on June 18, 1996. On April 23, 1997, we ruled arbitration was required.

Shortly before the trial judge's resolution of *O'Connell I,* O'Connell's counsel, by letter to NJM's counsel, raised, for the first time, the potential of a UM claim based on the presence of the large

truck. In the March 25, 1996, letter, O'Connell's counsel stated, "Please be advised that the claimant O'Connell may be making an uninsured motorist claim under the New Jersey Manufacturers coverage arising out of the accident of January 13, 1994." A May 13, 1996, certification of the New Jersey Department of Transportation disclosed a parking ban on Route 9 at the accident site. Subsequently, both NJM and Parkway rejected O'Connell's claim for UM coverage.

On August 28, 1996, by way of order to show cause, O'Connell commenced this action. The complaint sought a declaratory judgment directing defendants NJM and Parkway to arbitrate the UM claim. The defendants raised various defenses, one of which was O'Connell's failure to make reasonable efforts to identify the driver or owner of the large truck. *See Norman v. Selective Ins. Co.,* 249 *N.J.Super.* 104, 592 *A.*2d 24 (App.Div.1991).

The UM endorsements of both defendants' policies contain similar arbitration clauses. The NJM policy issued to Hovson's in pertinent part provides:

> If *we* and an *insured* disagree whether the *insured* is legally entitled to recover damages from the owner or driver of an *uninsured motor vehicle* ... or do not agree as to the amount of damages that are recoverable by that *insured,* then the matter may be arbitrated.

The Parkway policy in pertinent part provided:

> If we and an "insured" do not agree:
> 1. Whether that person is legally entitled to recover damages under this [UM endorsement]; or
> 2. As to the amount of damages;
> either party may make a written demand for arbitration.

The endorsements also included parallel standard coverage provisions, which agree to pay compensatory damages to an insured legally entitled to recover from the owner or operator of an uninsured vehicle for bodily injury or property damage sustained. Both policies require an insured to provide prompt notice of a claim.

On the return date of the order to show cause, the trial judge, relying on *Norman,* concluded he should hold a hearing on the

reasonableness of O'Connell's efforts to ascertain the identity of the owner or driver of the large truck. At the hearing, O'Connell provided his version of the events that led to his belated UM claim. He testified his view of the gas station driveway was blocked by a "red tractor trailer" as he drove north on Route 9. He claimed Harpootlian unexpectedly came out of the driveway and the front of his SUV collided with the left side of her car. Immediately after the accident, O'Connell got out of the SUV. After he spoke with Harpootlian, who had driven her car to the opposite side of Route 9, he returned to the accident site to await the police. As he did so, the tractor trailer drove away. Due to the purported illegible condition of the truck's license plate, he could provide no license plate information other than it was white and out-of-state. He did not indicate whether the truck had any identifying lettering or similar markings. He also did not advise the investigating police officer the tractor trailer had blocked his view of the gas station driveway. Seven and one-half hours after the accident, O'Connell went to Kimball Medical Center. He was released three days later. A close friend of O'Connell's family, an employee at Kimball where O'Connell's mother worked, testified O'Connell told her Harpootlian stated her view of Route 9 was blocked by the large truck. O'Connell testified after his release from the hospital he went back to see if he could locate the tractor trailer at the site of the accident in an effort to identify it, its owner, or its driver. O'Connell did not call Harpootlian as a witness.

In an oral opinion, amplified in writing, the trial judge ruled against coverage. Rejecting O'Connell's credibility and that of the family friend, the judge concluded O'Connell did not make any effort to determine the identity of the truck owner or driver because he never viewed the truck as a "potential responsible party." O'Connell appeals the ensuing order dismissing his complaint to compel UM arbitration.

Before turning to the substance of the appeal, we note a procedural anomaly that plaintiff relies upon to claim trial judge

error. The trial judge handled the case as a summary action. *See R.* 4:67–1. He conducted a hearing under *R.* 4:67–5. A summary proceeding is not a summary judgment proceeding. Therefore, references in the order and otherwise to the proceeding as one for summary judgment were inappropriate. More importantly, plaintiff is not entitled to favorable inferences afforded the non-movant in a summary judgment proceeding. *Compare Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 666 *A.*2d 146 (1995). Consequently, plaintiff's reliance on entitlement to favorable inferences is misplaced.

█ An automobile liability policy issued in this state must provide for UM coverage. The policy must provide the insured shall be legally entitled to recover damages from the operator or owner of an uninsured motor vehicle as that term is defined by *N.J.S.A.* 39:6–78. *See N.J.S.A.* 17:28–1.1. The term uninsured motor vehicle means the owner or operator of a vehicle whose identity cannot be ascertained. *N.J.S.A.* 39:6–78. However, before an insured is entitled to assert an uninsured motorist claim, he or she must prove all reasonable efforts were made to ascertain the identity of the uninsured motor vehicle and the owner or operator of that vehicle and that those efforts were unsuccessful. *See N.J.S.A.* 39:6–78. The clear purport of the statute is that, as a condition precedent to an insured's entitlement to pursue an uninsured motorist claim, the insured must prove he or she satisfied the statutory prerequisites. *See Norman, supra,* 249 *N.J.Super.* at 108–09, 592 *A.*2d 24.

Both policies here afforded the insured arbitration of his uninsured motorist claim when there was a dispute as to whether he was legally entitled to recover damages from the driver or owner of the truck which plaintiff alleged qualified as an uninsured motor vehicle. Plaintiff contends those arbitration clauses extend to the issue whether the statutory requisites were satisfied. We disagree.

█ A coverage determination is an issue to be resolved by the court, not by an arbitrator. *See Ohio Cas. Ins. Co. v. Benson,*

87 *N.J.* 191, 194–99, 432 *A*.2d 905 (1981); *Tornatore v. Selective Ins. Co.*, 302 *N.J.Super.* 244, 246, 695 *A*.2d 313 (App.Div.1997); *New Jersey Mfrs. Ins. Co. v. Franklin,* 160 *N.J.Super.* 292, 297, 389 *A*.2d 980 (App.Div.1978). Satisfaction of the threshold requisites of *N.J.S.A.* 39:6–78 is a coverage issue. It is an issue of coverage to be decided by the court, not by the arbitrator, because it determines whether the insured is a covered person for the purposes of the endorsement not whether the endorsement affords coverage to the covered person. *See Bocelli v. Hanover Metro Ins. Co.*, 219 *N.J.Super.* 6, 9, 529 *A*.2d 997 (App.Div.1987). By terms of the policies, an arbitrator has jurisdiction to decide whether the insured is legally entitled to recover damages from the operator or owner of an uninsured motor vehicle. That jurisdiction cannot be invoked until the insured has satisfied the conditions precedent prescribed by *N.J.S.A.* 39:6–78. If the conditions precedent of the statute are not satisfied, there can be no arbitration. Both policies limit the scope of arbitration to legal entitlement to recover damages from the owner or operator of the uninsured vehicle; neither policy extends arbitration to the scope of coverage. *See Ohio Cas. Ins. Co., supra,* 87 *N.J.* at 198, 432 *A*.2d 905. Therefore, the trial judge properly assumed jurisdiction as to whether plaintiff satisfied the statutory requisites.

Finally, our examination of the record satisfies us there is substantial credible evidence, when deference is afforded the trial judge's credibility determinations, to support the findings and conclusion that plaintiff failed to satisfy the reasonable effort requisites of *N.J.S.A.* 39:6–78. *See Rova Farms Resort, Inc. v. Investors Ins. Co. of Am.*, 65 *N.J.* 474, 484, 323 *A*.2d 495 (1974). Judge Lawrence Weiss very carefully and logically set forth his findings and conclusions in his combined opinions. There is nothing in the record before us that suggests any basis for disturbing the judgment that ensued.

Affirmed.