720 A.2d 396 (1998)
316 N.J. Super. 326
William SCHECKEL, Plaintiff-Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued telephonically October 15, 1998.
Decided November 13, 1998.
*397 Marion G. Hinman, Hoboken, for plaintiff-appellant (Marciano & Topazio, attorneys; Ms. Hinman, on the brief).
Carl Mazzie, Totowa, for defendant-respondent (Foster & Mazzie, attorneys; Mr. Mazzie, on the brief).
Before Judges MUIR, Jr.,[1] EICHEN and COBURN.
The opinion of the court was delivered by EICHEN, J.A.D.
In this declaratory judgment action for uninsured motorist (UM) coverage, plaintiff William Scheckel appeals from a grant of summary judgment in favor of defendant State Farm Mutual Automobile Insurance Company (State Farm) dismissing plaintiff's complaint. We reverse.
Plaintiff was involved in an accident with an unidentified vehicle on Wednesday, August 21, 1991. State Farm denied uninsured motorist coverage on the ground that plaintiff failed to give timely notice of the accident as required under his mother's automobile liability policy. Plaintiff filed a complaint seeking to compel State Farm to pay damages or arbitrate his entitlement to damages under the policy. State Farm filed an answer and affirmative defenses, alleging, among other defenses, that "plaintiff failed to report the alleged accident to the police" and that he had "breached the terms and conditions of the policy of insurance." Both parties demanded a trial by jury. Thereafter, at a settlement conference, the motion judge directed State Farm to file a motion for summary judgment. The judge had the following evidence before him to rule on State Farm's motion.
On August 21, 1991, plaintiff, a student at the University of Chicago, was riding his bicycle to his summer job as a waiter on Long Beach Island when he was knocked over by a slow-moving vehicle as it pulled out of a private roadway onto the main boulevard. The driver, who appeared to be in his early twenties, stopped momentarily to inquire if plaintiff was "all right." When plaintiff responded "yeah," he drove off. Plaintiff did not obtain the driver's name or any license or insurance information. The only description plaintiff could give was that the car was an American make and either blue or gray in color.
*398 When plaintiff arrived at work, he could not wait on tables because of bruises on his shoulder, arm and knee, so one of the restaurant's regular customers drove him home. The next day, plaintiff's left side still hurt him, and he went to a local medical center for treatment. He was examined by a health care provider who told him not to worry about his injuries and to "keep ice on [them]."
Plaintiff claims he tried to report the accident by telephone the following Saturday but was told he would have to come down to the police station during the regular work week if he wanted to file a report. He asserts he did not do so because of transportation problems.
Two weeks later, "the stiffness in [his] left knee [had] changed to pain and it got to the point where [he] recognized this was a problem." By then, the summer was over, and plaintiff had returned to his permanent residence in Nutley. On September 10, 1991, plaintiff consulted with an orthopedist, William Von Roth, M.D. An MRI was performed on September 19, 1991, after which Dr. Von Roth advised plaintiff that he would probably need surgery if conservative therapies did not work.[2]
On September 15, 1991, twenty-five days after the accident, plaintiff filed a police report. Plaintiff's mother notified State Farm of the UM claim approximately one month later, on October 18, 1991, after her medical insurer had declined to cover plaintiff's medical bills.[3]
At depositions, plaintiff testified that he did not file a police report sooner because he initially did not think his injuries were serious in light of the favorable prognosis he received on August 22, 1991, the day after the accident. He also testified that two weeks after the accident he twice returned to the scene (one time with a friend and another time with his mother) to try to locate the unidentified vehicle, but was unsuccessful.
In support of its motion for summary judgment, State Farm submitted a certification consisting of five brief paragraphs from Thomas Cooke, a claims specialist. In the certification, Mr. Cooke acknowledged the policy and recited the date of the accident and the date notice was given to the insurer. The last paragraph of the certification concludes:
I make this Certification at the request of counsel in support of a Motion for Summary Judgment based upon the insured's failure to comply with the terms of the policy relating to the requirement of reporting an accident to the police to receive uninsured motorist coverage.
A section of the policy entitled "Reporting Claim-Insured's Duty" states that "[t]he insured must give [State Farm] ... written notice of the accident or loss as soon as reasonably possible." Under another section dealing with UM coverage, the policy requires the insured "to report a `hit-and-run' accident to the police or to the Commissioner of Motor Vehicles within 48 hours and to [State Farm] within 30 days."
At the summary judgment motion on July 11, 1997, the Law Division judge determined that plaintiff had "severely prejudiced ... defendant's rights" by failing to satisfy the notice requirements of the policy. The judge observed that plaintiff had known he had suffered at least some injuries within 48 hours of the accident and, as a result, he should have immediately filed a written report with the police. The judge concluded that the issue of whether plaintiff had acted reasonably was not relevant, and rejected plaintiff's demand for a trial. The judge took judicial notice of the fact that Long Beach Island consists largely of summer communities populated by vacationers and concluded, as a matter of law, that plaintiff's delay in reporting the accident had thwarted defendant's efforts to ascertain the identity of the "hit-and-run" driver.
*399 On appeal, plaintiff raises three principal arguments: (1) the motion judge erred in refusing to consider the reasonableness of plaintiff's conduct as bearing on whether he had breached the policy; (2) State Farm failed to demonstrate any evidence of "appreciable prejudice" which could justify forfeiture of his rights under the policy; and (3) the 48-hour and 30-day notice provisions in the policy improperly add conditions to the statutorily mandated UM coverage that are not sanctioned by the Legislature.
The applicable standard for considering a motion for summary judgment is now well-settled. A judge must determine:
whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
[Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 523, 666 A.2d 146 (1995).]
The essence of the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 536, 666 A.2d 146 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202, 214 (1986)).
In this case, the motion judge concluded that the dispute was "one-sided" in favor of State Farm. We disagree and conclude that the judge erred in applying the prevailing legal principles to the facts in the case.
It is well settled that a "carrier may not forfeit the bargained-for protection [of an automobile liability policy] unless ... both a breach of the notice provision and a likelihood of appreciable prejudice" have been shown. Cooper v. Government Employees Ins. Co., 51 N.J. 86, 94, 237 A.2d 870 (1968). The holding in Cooper has also been applied to coverage under the UM endorsement of such a policy. Colangelo v. Bankers & Shippers Ins. Co. of N.Y., 185 N.J.Super. 205, 210-11, 447 A.2d 1356 (Law Div.1982). Hence, an insured's failure to comply with the notice requirements of a UM endorsement in an automobile liability policy is not a sufficient basis to deny coverage as a matter of law. In addition to the breach of the policy, the insurer must demonstrate that it will likely suffer appreciable prejudice from the breach. Cooper, supra, 51 N.J. at 94, 237 A.2d 870; Colangelo, supra, 185 N.J.Super. at 211, 447 A.2d 1356. The insurer bears the burden of ultimate persuasion for both propositions. Cooper, supra, 51 N.J. at 94 & n. 2, 237 A.2d 870.
Nonetheless, an insured claiming coverage under a UM endorsement may be deemed to have breached the policy if he or she fails to demonstrate that reasonable efforts were undertaken to ascertain the identity of the uninsured vehicle. O'Connell v. New Jersey Mfrs. Ins. Co., 306 N.J.Super. 166, 172, 703 A.2d 360 (App.Div.1997), certif granted, 153 N.J. 405, 709 A.2d 798 (1998); Norman v. Selective Ins. Co., 249 N.J.Super. 104, 107-08, 592 A.2d 24 (App.Div.1991); see also infra note 4. "[W]hether actions taken to ascertain identification constitute reasonable efforts depends on the circumstances of the individual case." Norman, supra, 249 N.J.Super. at 109, 592 A.2d 24. On this issue, the insured bears the burden of proof. Ibid. However, "[u]ninsured motorist provisions are generally interpreted broadly to afford the injured claimant recovery." Id. at 111, 592 A.2d 24.
In Norman, as in the instant case, both the insured and the phantom vehicle stopped after the accident but decided not to exchange information because the insured believed she was not really injured. Id. at 106, 592 A.2d 24. Several months after the accident, Mrs. Norman's stiff and painful shoulder developed into a lumbar spine injury which required her hospitalization. Id. at 107, 592 A.2d 24. In that circumstance, we concluded that the insured's "original failure to obtain the identity of the responsible party might be excusable...." Id. at 112, 592 A.2d 24. However, we also noted the absence of any evidence reflecting Mrs. Norman's efforts to identify the responsible party after she began to experience more painful symptoms, as well as her failure to file a police report. Ibid. We observed that if *400 Mrs. Norman had reported the accident to the police shortly after experiencing symptoms of her injury, its investigation may have led to the identification of the "hit and run" vehicle. Ibid. Nonetheless, we also pointed out that, in some circumstances, efforts to identify such a vehicle may be futile. Id. at 113, 592 A.2d 24. Because Mrs. Norman had apparently done nothing to investigate the phantom vehicle, we determined it was for the trier of fact to decide whether she had met the "reasonable efforts" requirements of the statute. See id. at 111, 592 A.2d 24; see also id. at 107-08, 592 A.2d 24 (discussing the UM statutory requirements set forth in N.J.S.A. 17:28-1.1).[4]
In this case, as in Norman, plaintiff's "original failure" to obtain the identity of the phantom vehicle could be viewed as "excusable." Cf. Norman, supra, 249 N.J.Super. at 112, 592 A.2d 24.
Similarly, plaintiff's late-filed police report could also be viewed as adequate under the circumstances. Plaintiff explained that he did not file a report immediately after the accident, or even the next day when his painful symptoms persisted, first, because he did not believe he was seriously hurt, and second, because the health care provider who examined him the day after the accident gave him the impression that his symptoms would soon resolve. Indeed, plaintiff's shoulder and arm pain did quickly dissipate.
Moreover, unlike the insured in Norman, as soon as plaintiff became aware that his knee injury was not resolving, he twice returned to Long Beach Island to look for the phantom vehicle, one time with a friend and another time with his mother.
Under the Brill standard, if the competent evidential materials and the reasonable inferences to be drawn therefrom, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational fact-finder to resolve the alleged dispute in favor of the non-moving party, then there is a genuine issue for trial and a motion for summary judgment must be denied. See Brill, supra, 142 N.J. at 540, 666 A.2d 146; see Norman, supra, 249 N.J.Super. at 109, 592 A.2d 24 ("[I]f the fact finder can reasonably draw or reject an inference or if conflicting inferences can be drawn from a given set of facts, the issue is one of fact, and summary judgment is inappropriate.").
Applying these principles here, we conclude the judge erred in rejecting as irrelevant plaintiff's claim that he acted reasonably, and in impliedly concluding that a rational fact-finder could not draw conflicting inferences from the facts presented. In Norman, we determined that the question of whether plaintiff's efforts to identify a phantom vehicle were reasonable should ordinarily be left to the fact-finder to resolve, especially where such efforts might prove futile. 249 N.J.Super. at 111, 113, 592 A.2d 24.
In the instant case, the motion judge observed that the police report was filed after the summer had ended, and therefore, it was unlikely that the unidentified vehicle would ever be found. Regrettably, the motion judge, who took judicial notice of this fact, concluded therefrom that State Farm had been unduly prejudiced by plaintiff's delay. Instead, the judge should have recognized that such an assumption could also give rise to the inference that any further efforts plaintiff may have made to locate the offending vehicle might be futile, thus excusing plaintiff from pursuing any further investigation. Moreover, the judge did not even consider that a rational fact-finder might excuse plaintiff's delay in reporting the accident in view of the health care provider's downplaying of his injuries and his claimed problems in securing timely transportation to the police station.
In summary, viewing the evidential materials and the reasonable inferences to be drawn therefrom in the light most favorable to plaintiff, a rational fact-finder could determine that (1) plaintiff's favorable prognosis excused him from filing a police report soon *401 after the accident and (2) plaintiff did, in fact, make "reasonable efforts" to identify the phantom vehicle or, alternatively, that such efforts would be futile. Accordingly, we conclude the judge erred in not allowing the case to proceed to trial.
Additionally, even if a rational fact-finder could not conclude that plaintiff made reasonable efforts to locate the unidentified vehicle, it is clear that State Farm failed to present sufficiently competent evidence to demonstrate that plaintiff's breach of the notice requirements of the policy caused the carrier "appreciable prejudice." Cooper, supra, 51 N.J. at 94, 237 A.2d 870; see also Colangelo, supra, 185 N.J.Super. at 211, 447 A.2d 1356. Certainly, the motion judge's taking judicial notice that most vacationers would have been gone from Long Beach Island by mid-September, reducing the likelihood the unidentified vehicle would be found, did not establish a prima facie case of "appreciable prejudice," especially in view of the varying inferences that that factual assumption suggests. Indeed, Mr. Cooke's certification contains no evidence that the insurer suffered any prejudice at all; it merely alleges that plaintiff failed to report the accident to the police in accordance with the terms of the policy.
Lastly, plaintiff's contention that the notice provisions in the policy violate N.J.S.A. 17:28-1.1 is without merit. R. 2:11-3(e)(1)(E).
Accordingly, the motion for summary judgment is reversed and the matter is remanded for trial.
NOTES
[1] Judge Muir did not participate in oral argument. However, the parties consented to his participation in the decision.
[2] Plaintiff subsequently had arthroscopic surgery on his left knee in 1993. His current diagnosis is reflex sympathetic dystrophy syndrome.
[3] Plaintiff claims that State Farm paid part of his medical bills under his mother's PIP coverage and pursuant to a pre-trial settlement. The remainder of his bills were covered under the health benefits guaranteed him as a student at the University of Chicago.
[4] N.J.S.A. 17:28-1.1 requires every automobile liability policy issued in New Jersey to include coverage for damages caused by an uninsured motorist. An uninsured motor vehicle includes a "hit-and-run" vehicle as defined in N.J.S.A. 39:6-78. See N.J.S.A. 17:28-1.1e(2)(c). N.J.S.A. 39:6-78(e) requires a claimant to make "reasonable efforts" to identify the other vehicle and the owner and operator thereof in order for the vehicle to qualify as a "hit-and-run" vehicle.