746 A.2d 57 (2000)
Garry KENNY, Plaintiff-Appellant,
v.
NEW JERSEY MANUFACTURERS INSURANCE COMPANY, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued January 25, 2000.
Decided February 23, 2000.
*58 Judith A. Millman, Westfield, for plaintiff-appellant (Garrubbo, Romankow & Rinaldo, attorneys; Ms. Millman, of counsel and on the brief).
Robert F. Cox, Cranford, for defendant-respondent (McCreedy and Cox, attorneys; Mr. Cox, on the brief).
Before Judges PRESSLER, CIANCIA and ARNOLD.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
Plaintiff Garry Kenny brought this action against his automobile liability insurer, defendant New Jersey Manufacturers Insurance Company (NJM), seeking an adjudication of his right to the uninsured motorist (UM) coverage of the policy it issued to him and for an order compelling it to arbitrate his UM claims. Both parties moved for summary judgment. Plaintiff appeals from the order granting defendant's motion to dismiss the complaint.
The facts are not in substantial dispute. Plaintiff was employed by the New Jersey Turnpike Authority as a toll collector stationed at interchange 16W. On February 16, 1995, he was injured when a motorist to whom he was handing change somehow managed to grab not only the money but also plaintiff's hand and started to drive away from the toll booth before letting it go, injuring plaintiff in the process. Plaintiff leaned out of the booth in an attempt to obtain a description of the vehicle. While he was able to identify it as a black and silver Astro van, he only managed to ascertain the first letter of the license plate, a "D," although he thought the next two letters might have been an "A" and an "L." Based on his partial observation, he thought the license plate was a dealer's plate because it started with "D." He was unable to make any observation of the driver. He also certified that he did not leave the toll collector's booth in an effort to make a better observation because of an instruction to toll collectors not to do so.
As a result of the incident, plaintiff sustained an injury of the left hand and shoulder, was attended to that day in a hospital emergency room, and was for some time thereafter receiving extensive treatment, including arthroscopic surgery. He returned to work on a part-time basis in November 1997 and full time in March 1998. During that period, plaintiff filed a workers' compensation petition.
On the date of his injury, plaintiff filed a report with the Turnpike Authority as his employer describing the event, identifying the make and color of the vehicle, and stating the extent of his partial observation of the license plate. He asserted in his certification on these motions that he did not himself advise the police of the event since it was his belief that the Turnpike Authority would do so. It appears, however, that the Turnpike Authority's policy was only to advise the State Police of emergency situations and since it did not regard this occurrence to be in that category, it did not do so, and, in fact, the police were never advised. Nor was the vehicle ever identified. Plaintiff did, however, annex to his motion a certification from the Coordinator of the Driver Review Division of the Division of Motor Vehicles *59 who asserted that a license "look-up" could not be performed on the basis of the information plaintiff was able to supply.
Plaintiff did not seek the benefit of the UM coverage of the NJM policy until some eight months after the event. NJM disclaimed on the basis of two provisions of the UM coverage which it claimed plaintiff had violated, namely sections A and C1 of Part H of the UM coverage. Section A purports to relieve the insurer of the obligation to provide the coverage unless the insured "promptly" notifies the carrier of "how, when and where the accident or loss happened ..." including "the names and addresses of any injured persons and of any witnesses." Section C1 requires the person seeking UM coverage to "[p]romptly notify the police if a hit-and-run driver is involved."
The predicate of NJM's summary judgment motion was simply that plaintiff's failure to give it prompt notice of the incident and his failure to notify the police thereof automatically relieved it of its coverage obligation under the policy. The trial judge agreed. We do not.
It has long been the rule in this State that despite policy language to the contrary, the insured does not forfeit the coverage of his policy by a breach of the "prompt notice" provision unless the carrier satisfies the burden of proving that it suffered appreciable prejudice by reason thereof. See, e.g., Cooper v. Government Employees Ins. Co., 51 N.J. 86, 94, 237 A.2d 870 (1968); Harrow Stores, Inc. v. Hanover Ins. Co., 315 N.J.Super. 547, 550, 719 A.2d 196 (App.Div.1998); Polarome Mfg. Co., Inc. v. CIIC, 310 N.J.Super. 168, 175, 708 A.2d 450 (App.Div.), certif. denied, 155 N.J. 590, 715 A.2d 993 (1998); Solvents Recovery Service of New England v. Midland Ins. Co., 218 N.J.Super. 49, 54, 526 A.2d 1112 (App.Div.1987). There is no reason we can perceive why this rule should not also apply to UM coverage and it has indeed been routinely so applied. See Scheckel v. State Farm Mut. Auto. Ins. Co., 316 N.J.Super. 326, 331, 720 A.2d 396 (App.Div.1998); Colangelo v. Bankers & Shippers Ins. Co. of N.Y., 185 N.J.Super. 205, 210-211, 447 A.2d 1356 (Law Div.1982). Thus NJM, in respect of the section A notice requirement above quoted, was required to show that it sustained appreciable prejudice by reason thereof. It made no effort to do so.
We are also satisfied that the insured's failure of compliance with the requirement of the policy that prompt notice be given to the police of an occurrence involving a hit-and-run driver cannot be ipso facto disqualifying. As we made clear in Scheckel v. State Farm Mut. Auto. Ins. Co., supra, the issue is not simply whether the insured notified the police. The pertinent two-pronged question rather is first, whether the insured's conduct in attempting to identify the hit-and-run driver was reasonable or, alternatively, efforts to do so would have been futile; and second, whether the failure to file a prompt police report was excusable under the circumstances. See also O'Connell v. New Jersey Mfrs. Ins. Co., 306 N.J.Super. 166, 172, 703 A.2d 360 (App.Div.1997), certif. granted, 153 N.J. 405, 709 A.2d 798 (1998), appeal dismissed, 157 N.J. 537, 724 A.2d 799 (1998); Norman v. Selective Ins. Co., 249 N.J.Super. 104, 107-108, 592 A.2d 24 (App.Div.1991).
The requirement of reasonable efforts to identify the hit-and-run car or to show that such efforts would have been futile derives from the hit-and-run provisions of the Unsatisfied Claim and Judgment Fund Law (UCJF), N.J.S.A. 39:6-61 to -91, more particularly, N.J.S.A. 39:6-78(e). While the UM coverage here does not explicitly reiterate the statutory language, its import is substantially mirrored by the policy language of sections A and C1. In any event, we point out that UM coverage is mandated by N.J.S.A. 17:28-1.1, which incorporates the hit-and-run definition of N.J.S.A. 39:6-78. See Transport of N.J. v. Watler, 161 N.J.Super. 453, 460, 391 A.2d 1240 (App.Div.1978), aff'd as *60 modified, 79 N.J. 400, 400 A.2d 61 (1979). Thus N.J.S.A. 17:28-1.1 must, in our view, be read as incorporating all of the claim-eligibility requirements of that statute, i.e., those conditions that render the accident a hit-and-run occurrence subject to the remedial scope of UCJF. And it must also be read as an exclusive list of eligibility requirements. The point, of course, is that since a primary purpose of mandatory UM coverage was to alleviate the financial burdens on the Fund, see, e.g., Riccio v. Prudential Property & Cas. Ins. Co., 108 N.J. 493, 503-504, 531 A.2d 717 (1987), it would defeat the legislative intent if the policy provisions were construed more restrictively than the analogous UCJF provision. Consequently, "in UM cases our courts have frequently struck policy provisions which were more restrictive than those mandated by statute ...," that is to say, those mandated by N.J.S.A. 17:28-1.1, which incorporate N.J.S.A. 39:6-78. Campbell v. Lion Ins. Co., 311 N.J.Super. 498, 507, 710 A.2d 576 (App.Div.1998). See Perez v. American Bankers Insurance Co. of Florida, 81 N.J. 415, 419, 409 A.2d 269 (1979) (invalidating a UM policy provision requiring corroboration of a non-contact hit-and-run accident as contrary to and more restrictive than coverage afforded by N.J.S.A. 39:6-78). See also Ciecka v. Transamerica Ins. Group, 81 N.J. 421, 427-28, 409 A.2d 272 (1979), and Walkowitz v. Royal Globe Ins. Co., 149 N.J.Super. 442, 444-45, 374 A.2d 40, certif. dismissed, 75 N.J. 584, 384 A.2d 815 (1977) (invalidating certain UM coverage offsets provided for by the policy as contrary to the coverage mandated by N.J.S.A. 17:28-1.1 and 39:6-78). And see Liberty Mut. Ins. Co. v. Massey, 188 N.J.Super. 631, 637, 458 A.2d 152 (Ch.Div.1983) (reforming UM policy language "to the extent necessary to conform with the statutory mandated coverage").
N.J.S.A. 39:6-78 does not condition Fund eligibility on the claimant's having filed a police report. Thus the UM coverage of the policy may not so condition coverage. We do not, however, suggest that the policy requirement of notification of the police of a hit-and-run accident is entirely of no moment. We think it plain that in appropriate circumstances, such notification may well constitute a necessary element of the "reasonable efforts" required by N.J.S.A. 39:6-78(e). And, on the other hand, as we said in Scheckel v. State Farm Mut. Auto. Ins. Co., supra, 316 N.J.Super. at 334-335, 720 A.2d 396, it may also be that failure of such notification, because it is excusable under the circumstances, cannot fairly be deemed to be a required component of "reasonable efforts." These, of course, are all matters of fact to be determined by the trier of fact in deciding whether the claimant's efforts to identify the hit-and-run car and driver were reasonable.
NJM relies on several unpublished opinions of this court holding that failure of the insured to file a prompt report with the police of a hit-and-run incident is disqualifying. We do not quarrel with the notion that the purpose of the policy requirement is not only to afford the carrier an opportunity itself to locate the hit-and-run driver but also to deter fraudulent claims. Obviously, however, these concerns can be safely left to the trier of fact. We reject, however, as contrary to well-settled law, the proposition that the insured's failure to comply with the policy requirement of promptly notifying the police of a hit-and-run accident can be automatically disqualifying.
Plaintiff's showing on NJM's summary judgment motion was sufficient to defeat it. His effort to observe and identify the vehicle at the time of the accident, his prompt report of the information he then had to the Turnpike Authority, and his subsequent unsuccessful inquiry of the Division of Motor Vehicles may be found by the trier of fact to have constituted reasonable efforts. Any further efforts may also be found by the trier of fact to have been likely futile. And plaintiff's reliance on the Turnpike Authority to notify the police *61 may also be found by the trier of fact to have excused his own failure to have done so.
The summary judgment appealed from is reversed, and we remand for further proceedings consistent with this opinion.