817 A.2d 1017

COURIER NEWS, PLAINTIFF–APPELLANT, v. HUNTERDON COUNTY PROSECUTOR'S OFFICE, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued March 12, 2003—Decided March 19, 2003.

Before Judges KING, LISA and FUENTES.

*John C. Connell* argued the cause for appellant (*Archer & Greiner*, attorneys; *Mr. Connell, William L. Ryan and Kerri E. Chewning*, on the brief).

*Steven C. Lember*, First Assistant Prosecutor, argued the cause for respondent (*J. Patrick Barnes*, Hunterdon County Prosecutor, attorney; *Mr. Lember*, on the brief).

*Thomas J. Cafferty* argued the cause for amicus curiae, New Jersey Press Association (*McGimpsey & Cafferty*, attorneys; *Mr. Cafferty and Arlene M. Turinchak*, on the brief).

The opinion of the court was delivered by

FUENTES, J.A.D.

Plaintiff Courier News moves, under *R.* 2:5–6(a), for leave to appeal the decision of the Law Division denying its application made pursuant to the Open Public Records Act (OPRA), *N.J.S.A.* 47:1A–1 to –13. Plaintiff seeks access to tape recordings of all 911 calls made on February 14, 2002, in connection with the death of Costas Christofi at the home of Jayson Williams. These recordings are in the custody of defendant Hunterdon County Prosecutor's Office as evidence in the case of *State v. Jayson Williams.* On March 4, 2003, we granted the motion of the New Jersey Press Association to intervene as *amicus curiae.* Williams did not participate in the proceedings before the Law Division and did not

make an application to intervene here. On March 12, 2003, we heard oral argument on plaintiff's motion. We now grant leave to appeal [1] and summarily reverse. *R.* 2:2–3(b); *R.* 2:8–3(b).

## I

In the early morning hours of February 14, 2002, an emergency 911 telephone call was placed from the home of former professional athlete Jayson Williams in connection with the death of Costas Christofi. Immediately thereafter, law enforcement authorities concluded that the death was a homicide and seized the tape recording of the 911 call as evidence in the criminal investigation. On May 1, 2002, a Grand Jury indicted Williams on various criminal charges including aggravated manslaughter, hindering apprehension, tampering with a witness and tampering with evidence.[2]

On July 8, 2002, a Courier News reporter formally requested a copy of the 911 tape from the Hunterdon County Prosecutor's Office. On July 10, 2002, defendant denied the request based on the following reasons:

1. The release of the information requested will jeopardize the continuing investigation and prosecution of the pending, post-indictment case of *State v. Williams,* and

2. The release of the information requested would be otherwise inappropriate because it is evidence in a pending criminal prosecution;

3. The release of the information requested would be otherwise inappropriate because its release would impair the constitutional rights of victims. N.J. State Constitution, Article 1, Paragraph 22, *N.J.S.A.* 52:4B–36.

4. The release of the information requested would be otherwise inappropriate because its release might impair the right of the defendant to obtain a fair trial. N.J. State Constitution, Article I, Paragraph 10.

---

[1] Although not dispositive of the issue, we take note that in the course of oral argument defendant indicated it was no longer opposing plaintiff's motion for leave to appeal.

[2] On March 4, 2003, the Hunterdon County Prosecutor's Office re-presented the case and obtained a superseding indictment.

By letter dated October 22, 2002, counsel for the Courier News again requested from defendant a copy of the 911 tapes. Defendant again denied the request.

On December 18, 2002, plaintiff filed an action in lieu of prerogative writs and an order to show cause with verified complaint seeking access to the 911 tape as a government record under OPRA.[3] The Law Division judge entered the order to show cause on December 18, 2002, and made it returnable on January 24, 2003.

## II

On the return date of the order to show cause, the court construed plaintiff's application as one seeking "a mandatory preliminary injunction." Invoking the authority of *Crowe v. De Gioia*, 90 *N.J.* 126, 447 *A.*2d 173 (1982), the court then concluded that plaintiff had not shown irreparable harm because: "Defendants do not take the position that they refuse to release the 911 tapes, but indicated that the tapes will be released very shortly when one of the tapes will be admitted in evidence [in the criminal trial]." The court also found that granting plaintiff's request would alter the status quo.

> The pretrial media coverage has been extensive. To publish the transcripts of the tapes on the eve of jury selection would have a potential to make it more difficult to select a fair and impartial jury panel. The argument that a foreign jury could be impaneled is one that does—is not significant to this court.

> This is not a case where the defendants are refusing to provide the information. Their position is, to provide it at this time so alters the status quo that the irreparable harm would not occur to the plaintiffs, but would occur to the defendants and the survivors of the decedent.

The court denied plaintiff's application "without prejudice," but indicated that plaintiff retained the right to pursue the relief requested by filing a summary judgment motion under *R.* 4:69–2.

---

3 Plaintiff also asserted a legal right of access under the Common Law, the First Amendment of the Constitution of the United States, and Article I, ¶ 6 of the New Jersey Constitution. Because we decide the case under OPRA, we do not reach any of the other legal grounds asserted by plaintiff.

## III

Both plaintiff and *amicus curiae* intervenor argue that the Law Division judge erred when he failed to apply the procedural mechanism outlined in OPRA. We agree.

Under OPRA,

A person who is denied access to a government record by the custodian of the record, at the option of the requestor, may:

- institute a proceeding to challenge the custodian's decision by filing an action in Superior Court which shall be heard in the vicinage where it is filed by a Superior Court Judge who has been designated to hear such cases because of that judge's knowledge and expertise in matters relating to access to government records;

....

*Any such proceeding shall proceed in a summary or expedited manner. The public agency shall have the burden of proving that the denial of access is authorized by law.* If it is determined that access has been improperly denied, the court or agency head shall order that access be allowed. A requestor who prevails in any proceeding shall be entitled to a reasonable attorney's fee.

[*N.J.S.A.* 47:1A–6 (emphasis added).]

This statutory language requires a trial court to proceed under the procedures prescribed in Rule 4:67. *R.* 4:67–1(a). The action is commenced by order to show cause supported by a verified complaint. *R.* 4:67–2(a). At the initial hearing, if the court is "satisfied with the sufficiency of the application, [it] shall order defendant to show cause why final judgment should not be rendered for the relief sought." *Ibid.* The court must try the case at the return date of the order to show "or on such short day as it fixes." *R.* 4:67–5. The Rule also clearly sets out the procedural framework governing the trial.

If no objection is made by any party, or the defendants have defaulted in the action, or the affidavits show palpably that there is no genuine issue as to any material fact, the court may try the action on the pleadings and affidavits, and render final judgment thereon. If any party objects to such a trial and there may be a genuine issue as to a material fact, the court shall hear the evidence as to those matters which may be genuinely in issue, and render final judgment.

[*Ibid.*]

A summary action is not a summary judgment motion. In a proceeding conducted under *R.* 4:67–5, a court must make findings of facts, either by adopting the uncontested facts in the

pleadings after concluding that there are no genuine issues of fact in dispute, or by conducting an evidentiary hearing. Moreover, a party in a summary action proceeding is not entitled to favorable inferences such as those afforded to the respondent in a summary judgment motion. *O'Connell v. New Jersey Mfrs. Ins. Co.*, 306 *N.J.Super.* 166, 172, 703 *A.2d* 360 (App.Div.1997).

Here, the Law Division judge's procedural errors deprived plaintiff of its right to a summary adjudication of its OPRA application. However, all of the legal issues have been fully briefed. We invoke our original jurisdiction to decide the case and thereby vindicate the important public policy embodied in OPRA. *N.J.S.A.* 47:1A–1; *AAA Mid–Atlantic Ins. v. Prudential Ins.*, 336 *N.J.Super.* 71, 78, 763 *A.2d* 788 (App.Div.2000); *R.* 2:10–5.

## IV

We begin our analysis by emphasizing the public policy of this State expressed in OPRA:

> government records shall be readily accessible for inspection, copying, or examination by the citizens of this State, with certain exceptions, for the protection of the public interest, and any limitations on the right of access accorded by [OPRA] shall be construed in favor of the public's right of access....
>
> [*N.J.S.A.* 47:1A–1.]

The custodian of the government record has the burden of proving that the denial of access is authorized by law. *N.J.S.A.* 47:1A–6.

Defendant does not dispute that the 911 tape is a "government record" within the meaning of *N.J.S.A.* 47:1A–1.1.[4] Defendant

---

[4] The statute defines "Government record" or "record" as "any paper, written or printed book, document, drawing, map, plan, photograph, microfilm, data processed or image processed document, *information stored or maintained electronically or by sound-recording* or in a similar device, or any copy thereof, that has been made, maintained or kept on file in the course of his or its official business by any officer, commission, agency or authority of the State or of any political subdivision thereof, including subordinate boards thereof, or that has been received in the course of his or its official business by any such officer, commission, agency, or authority of the State or of any political subdivision thereof, including subordinate boards thereof. The terms shall not include inter-

nevertheless argues that the tape is exempt from public inspection under the provisions of *N.J.S.A.* 47:1A–3a because it is part of an ongoing criminal investigation and its release to the media would be inimical to the public interest because (1) it would make selecting an impartial jury more difficult; and (2) dissemination of the tape will likely cause juror confusion. We reject these arguments because they are not supported by either facts or law.[5]

*N.J.S.A.* 47:1A–3a provides:

Notwithstanding the [other] provisions of [this Act], where it shall appear that the record or records which are sought to be inspected, copied, or examined shall pertain to an investigation in progress by any public agency, the right of access provided for in [OPRA] may be denied if the inspection, copying or examination of such record or records shall be inimical to the public interest. . . .

Thus, as noted by Judge Serpentelli in *Asbury Park Press v. Lakewood Twp. Police Dep't,* 354 *N.J.Super.* 146, 158, 804 *A.*2d 1178 (Law Div.2002), "In order to find a basis to deny access to the tapes, the court must find both that they pertain to an investigation *and* that their release would be inimical to the public interest."[6]

### Criminal Investigation

Here, defendant asserts that the 911 tape is a record "pertaining to" its ongoing investigation in the case of *State v. Jayson*

---

agency or intra-agency advisory, consultative, or deliberative material." (Emphasis added.)

[5] Our legal analysis is limited to addressing defendant's specific grounds for confidentiality. We do not decide here whether all 911 tapes are open to public inspection under OPRA. We are aware that under *N.J.S.A.* 47:1A–1a "a public agency has a responsibility and an obligation to safeguard from public access a citizen's personal information with which it has been entrusted when disclosure thereof would violate the citizen's reasonable expectation of privacy." Here, the 911 caller was Williams' brother. The call was made to summon emergency medical personnel to Williams' home in connection with the shooting of Christofi. No argument has been made in support of confidentiality based on the caller's reasonable expectation of privacy.

[6] Although the court in *Asbury Park Press* was applying the Right to Know Law, the provisions in *N.J.S.A.* 47:1A–3a under OPRA remained the same.

*Williams.* Defendant bases its argument on its continuing discovery obligations to defense counsel under *R.* 3:13–3(g), which provides in pertinent part that:

> If subsequent to the compliance with a request by the prosecuting attorney or defense counsel or with an order issued pursuant to the within rule and prior to or during trial *a party discovers additional material* or witnesses previously requested or ordered subject to discovery or inspection, that party shall promptly notify the other party or that party's attorney of the existence thereof. (Emphasis added.)

■ Thus, based only on its duty to disclose to the defense *newly discovered additional evidence,* defendant argues that the 911 tapes fall within the *N.J.S.A.* 47:1A–3a exemption as a record pertaining to "an investigation in progress." Defendant's position is untenable. It is axiomatic that a 911 tape obtained by defendant over a year ago cannot constitute "newly discovered evidence." Acceptance of defendant's argument would seal every government record associated with a criminal investigation until the trial has been completed and all potential appeals have been exhausted. Such a prospect would directly contravene the citizen's right of access to government records embodied in OPRA.

### Impact on Jury Selection

Defendant argues that release of the 911 tape to plaintiff, and thereafter to the general media, would likely result in the tape being played and transcribed repeatedly, creating an "extreme risk" of tainting the jury pool in a county of "modest population" like Hunterdon.[7]

Our Supreme Court has long recognized that "pervasive pretrial publicity does not necessarily preclude the likelihood of an impartial jury." *State v. Koedatich,* 112 *N.J.* 225, 268, 548 *A.*2d 939 (1988), *cert. denied, sub nom., Koedatich v. New Jersey,* 488 *U.S.* 1017, 109 *S.Ct.* 813, 102 *L.Ed.*2d 803 (1989); *State v. Biegenwald,*

---

[7] Defendant does not offer any facts to support this conclusion. However, according to the 2000 census, Hunterdon County's population includes 90,638 adults over the age of eighteen.

106 *N.J.* 13, 35, 524 *A.*2d 130 (1987). As noted by the Court in *State v. Timmendequas,* 161 *N.J.* 515, 567, 737 *A.*2d 55 (1999), *cert. denied, sub nom., Timmendequas v. New Jersey,* 534 *U.S.* 858, 122 *S.Ct.* 136, 151 *L. Ed.*2d 89 (2001),

> The right to an impartial jury does not require that jurors be totally ignorant of the facts and issues involved in a given case. Indeed, "it is difficult to imagine how an intelligent venireman could be completely uninformed of significant events in his community." It is sufficient "if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." (Citations omitted.)

█ In cases involving strong media interest, our courts strike a delicate balance, accommodating both the defendant's right to a fair trial and the public's right of access. There are a number of means available to the criminal trial judge to achieve this objective, e.g., a motion for a change of venue, to empanel a foreign jury, *R.* 3:14–2, and a vigorous and comprehensive voir dire. *Asbury Park Press v. Lakewood Twp. Police Dep't, supra,* 354 *N.J.Super.* at 162, 804 *A.*2d 1178. The fact that media coverage may make it more difficult to select a fair and impartial jury is not a basis to deny access to government records under OPRA.

### *Juror Confusion*

Defendant plans to introduce into evidence in the *Williams* trial an electronically enhanced version of the 911 tape. Through this enhancement process, defendant expects to highlight background conversations and focus the jurors' attention on alleged inculpatory evidence not otherwise audible. In this light, defendant claims that:

> To release the original 911 tape to the Press for interpretation and dissemination to the public will likely engender confusion between that which has been released to the Press and that which is admitted as evidence and played for the jury at trial. Again, confusion in an anticipated jury pool is "inimical" to the public interest.

█ In the course of oral argument, we repeatedly asked defendant's counsel for specific evidence supporting this assertion. None was proffered. Under OPRA, a public agency seeking to restrict the public's right of access to government records must produce specific reliable evidence sufficient to meet a statutorily

recognized basis for confidentiality. Absent such a showing, a citizen's right of access is unfettered. Moreover, in assessing the sufficiency of the proofs submitted by the public agency in support of its claim for confidentiality, a court must be guided by the overarching public policy in favor of a citizen's right of access. *N.J.S.A.* 47:1A–1. Here, defendant's fears of potential juror confusion are purely speculative and fail to meet the statutory burden of proof.

## V

The judgment of the Law Division dismissing plaintiff's verified complaint is summarily reversed. Defendant is ordered to immediately provide plaintiff with a copy of the sound recording of the 911 emergency telephone call made on February 14, 2002 from the home of Jayson Williams.

Reversed.