NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3381-12T1

AMERICAN CIVIL LIBERTIES UNION
OF NEW JERSEY, a non-profit
organization located in Newark,
New Jersey,

     Plaintiff-Appellant,

v.

NEW JERSEY DIVISION OF CRIMINAL
JUSTICE and BRUCE SOLOMON,
Custodian of Records for the
New Jersey Division of Criminal
Justice,

     Defendants-Respondents.

_____

| |
|---|
| **APPROVED FOR PUBLICATION** |
| **May 13, 2014** |
| **APPELLATE DIVISION** |

Telephonically Argued January 23, 2014 —
Decided May 13, 2014

Before Judges Fuentes, Simonelli and Haas.

On appeal from Superior Court of New Jersey,
Law Division, Mercer County, Docket No.
L-2562-12.

Thomas W. MacLeod argued the cause for
appellant (American Civil Liberties Union of
New Jersey Foundation, attorneys; Mr.
MacLeod, on the brief).

Mary Beth Wood, Senior Deputy Attorney
General, argued the cause for respondents
(John J. Hoffman, Acting Attorney General,
attorney; Lewis A. Scheindlin, Assistant
Attorney General, of counsel; Ms. Wood, on
the brief).

The opinion of the court was delivered by

FUENTES, P.J.A.D.

We are asked to determine whether, in response to a request for government records brought under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to 47:1A-13, and our common law right of access, a government agency has the authority to redact an admittedly responsive document to withhold information the agency deems to be outside the scope of the request. In defending the right to adopt such a policy, the public agency concedes the information it withheld is not supported by any claim of privilege or other recognized exemption to disclosure in OPRA or under our State's common law right of access.

The legal question raised here derives from an OPRA request made by the American Civil Liberties Union of New Jersey (ACLU) to the New Jersey Division of Criminal Justice (DCJ), seeking records "pertaining to all forms of Automatic License Plate Recognition (ALPR) technology." The DCJ responded by sending the ACLU seventy-nine pages of redacted documents, including certain pages of a grant application that were completely blacked-out. In taking this action, the DCJ redacted from the grant application information that, in the DCJ's opinion, did not pertain to ALPR technology and thus was outside the scope of the request.

The ACLU filed an order to show cause and verified complaint in the Law Division against the DCJ seeking

declaratory and injunctive relief with respect to this redaction policy, and an award of counsel fees under OPRA's fee-shifting provision. The matter came before the Law Division as a summary action under N.J.S.A. 47:1A-6. After considering the arguments of counsel, the Law Division dismissed the ACLU's complaint, finding the DCJ's actions were "an appropriate way to respond."

As framed by the trial court, the policy adopted by the DCJ presented two questions: (1) in responding to a request for a public document "under either OPRA or the common law" can a custodian determine to withhold information he or she believes falls outside the scope of the request, without first seeking consent or clarification from the requestor? And if so, (2) is it reasonable to impose the "onus" on the requestor to clarify the request or attempt to obtain the voluntary release of the redacted information before initiating legal action? The court ultimately decided to answer "yes" to both of these questions.

It is important to emphasize that the decision of the trial court to uphold the DCJ's redaction policy did not rest on how the court characterized the ACLU's request. The court viewed the documents requested by the ACLU as "public records," unambiguously available to the public under both OPRA and the common law right of access. Analytically, the court did not find, and the DCJ did not argue, that the redaction policy was

in any way predicated on or supported by any claim of privilege or statutorily recognized exemption to disclosure under either OPRA or the common law right of access.

In the trial judge's view, the action taken by the custodian constituted a reasonable, good faith determination by the agency that the redacted records fell outside the scope of the request. If the requestor is dissatisfied with the government agency's response, it is "not unreasonable to ask the requestor to make a follow[-]up request, which is what could have happened here and would have resolved this particular issue."

We disagree with the Law Division and reverse. The redaction protocol adopted by the DCJ here cannot stand because it is not grounded on any of the statutorily recognized exemptions to disclosure in OPRA, N.J.S.A. 47:1A-1.1, or on a claim of confidentiality under the common law. Absent a legally recognized exception to disclosure, a citizen's right of access to public information is unfettered. Courier News v. Hunterdon Cty. Prosecutor's Office, 358 N.J. Super. 373, 383 (App. Div. 2003).

The redaction policy adopted by DCJ is based entirely on the unilateral determination by the custodian of records of what, in his or her opinion, is relevant to the ACLU's request.

This approach confers upon the custodian of government records quasi-judicial powers to determine what information contained within a "government record," as defined in N.J.S.A. 47:1A-1.1, is relevant to a request and therefore subject to disclosure and, conversely, what information contained in this same document will be withheld from the public, based only on the custodian's notion of relevancy. We discern no legal support for such a policy in OPRA.

Equally troubling is the court's decision to place the "onus" on the requestor to clarify or engage in negotiations with the custodian as a jurisdictional prerequisite to instituting legal action to enforce his or her rights to access public information. This extra hurdle the requestor must clear before getting to the courthouse doors is not only untethered to any provision in OPRA, but contravenes the clear public policy expressed by the Legislature in OPRA, directing the courts to construe "any limitations on the right of access . . . in favor of the public's right of access." N.J.S.A. 47:1A-1.

I

These facts are not disputed. On July 30, 2012, the ACLU filed a formal OPRA request[1] to the DCJ seeking records

---

[1] The ACLU transmitted the request using the State of New Jersey's electronic request form.

"pertaining to all forms of Automatic License Plate Recognition (ALPR) technology."  The ACLU specifically requested:

> 1.  Records of all federal funds sought, received, or managed by your agency in connection with procurement and use of ALPR technology;
>
> 2.  Records of all police departments and other agencies that received or purchased ALPR technology using funds from grants managed, arranged, or assisted by your agency;
>
> 3.  All policies, procedures, and other general guidelines set for your agency by federal grant-making agencies, and for police departments and other agencies by your agency, with respect to procurement and use of ALPR technology, and to storage, access and sharing of data scanned with ALPR technology, including but not limited to those governing use of, access to, and auditing of databases, data mining programs, and other computerized management systems into which data from two or more police departments or other agencies is deposited;
>
> 4.  All training materials relating to procurement and use of ALPR technology, and to storage, access, and sharing of data scanned with ALPR technology;
>
> 5.  All records of the purchase, sale, or other transfer of ALPR data to any individual or entity; and
>
> 6.  All ALPR data sharing agreements with any agency of the federal government, including but not limited to memoranda of understanding/agreement between your agency and any division or department of the U.S. Department of Justice, U.S. Department of Homeland Security, U.S. Department of

A-3381-12T1

Transportation, Federal Aviation Administration, and Department of Defense.

In a transmittal letter submitted simultaneously with the OPRA request, the attorney representing the ACLU apprised the "OPRA custodian of government records" that if "any portions of the requested materials are exempt from disclosure, please redact only what you believe is exempt and provide the remaining, non-exempt portions."

The DCJ confirmed receipt of the ACLU's request on September 14, 2012, and sent an ostensible response to the request that included "electronic copies of 79 pages of redacted records[.]" As described by the ACLU in its brief, "[t]he redactions were made line-by-line in some cases; on other pages, particular pieces of data within the record were blacked out." The only explanation or justification the OPRA custodian provided for taking this action consisted of the following curt statement: "redacted information not relevant to request." (Emphasis added).

On November 2, 2012, the ACLU filed a verified complaint in the Law Division alleging the redacted documents sent by the custodian violated the disclosure provisions under OPRA and the common law right of access. The ACLU alleged the records requested fell within the definition of "government records" under N.J.S.A. 47:1A-1.1. As such, the DCJ did not have the

legal authority to redact a government record and withhold information from it based on the DCJ's unilateral determination of what may or may not have been relevant to the requestor's purpose.

By way of relief, the ACLU sought: (1) a judicial declaration that the DCJ's redaction policy violated OPRA and the common law right of access; (2) an order enjoining the DCJ from denying access to nonexempt portions of government records "based on claims that they are not relevant to the request" and compelling the DCJ to issue a clear policy statement and training protocol to avoid similar violations of the laws governing the public's right to inspect and copy government records; and (3) an award of counsel of fees pursuant to N.J.S.A. 47:1A-6.

The following colloquy between the trial judge and the Deputy Attorney General representing the DCJ captured the essence of the dilemma created by the public agency's position here.

> [DEPUTY ATTORNEY GENERAL]: . . . [The ACLU] asked for a very limited piece of information and we gave it to them. Had they come back and said, wait, I want the grant application or even what they're arguing now, I want grant materials concerning the law enforcement initiatives, we would have given them that. But they've never asked for it. . . . [T]heir request was very, very specific. . . . It said very,

very clearly and in a very limited way, I want the grant materials for ALPR technology, and that's what we gave them.

THE COURT: But, . . . they're concerned that you are exercising judgment and that they can't trust the judgment of a defendant to determine what is responsive and what's not and that the better rule is to provide it all. And there's something appealing to that because then you take any sort of judgment out of the mix.

[DEPUTY ATTORNEY GENERAL]: . . . [Y]our Honor, it's not judgment. . . . [I]f you look at the records, . . . the custodian here made clear that he was redacting - - he left the headings in for everything. So, for example, at PA-14, . . . he left open D reentry and redacted underneath it. So you can see that it had nothing to do with ALPR technology. The redacted portion had to do with reentry. And in . . . subcategory (c), the heading is prevention. It has nothing to do with ALPR technology. And the custodian was really very careful in doing that so that they could see that it had nothing to do with their request.

THE COURT: But, . . . they believe they don't have to accept the limitation because it's a public record and there's no exemption that prevents them from - - that should prevent them from getting access to the material.

After a thorough review of the ACLU's request, the trial judge found the State's grant application attached to the ACLU's verified complaint noted that only a certain amount of the funds of the total grant would be committed to purchasing "license plate readers for strategic deployment throughout the state."

Other sections of the grant application focused on different law enforcement initiatives, such as reducing recidivism, discharge planning for juvenile delinquents, and establishing a pilot program for defendants with mental health needs.

After carefully scrutinizing the ACLU's request for ALPR-related records and the DCJ's responsive documents, the judge found "it was reasonable to conclude that prevention . . . and reentry aspects of the grant have nothing to do with automatic license plate readers." The judge noted that the ACLU had conceded that its initial request did not seek information pertaining to other projects that were included in the grant application. Against these findings, the court agreed with the DCJ and concluded "[t]his case is not about an exemption and it is about the reasonable scope of a request and whether the records provided by the agency were responsive to that request."

Despite these findings, the judge acknowledged what she characterized as the ACLU's "underlying concerns" that this approach left the door ajar for less scrupulous custodians to

> redact more information than would be proper
> when they were responding to a request and
> that you don't want to put the custodian in
> that situation. And I think, sure, that's
> something that would need to be carefully
> looked at in any particular case and I
> surely accept that that's something that
> could happen. But that particular danger to
> me is not at all supported by this record
> where their request was very specific and

A-3381-12T1

they were provided with documents that responded to their request. And I think if there were - - if they determined after they viewed the documents that they received with portions deleted that they wanted the entire document, I think it was reasonable to require any requestor to make a follow[-]up request. Now they want the additional document that they did not ask for the first time.

## II

The Legislature has carefully described the responsibility of the custodian in responding to a request for a government record under OPRA:

> A request for access to a government record shall be in writing and hand-delivered, mailed, transmitted electronically, or otherwise conveyed to the appropriate custodian. A custodian shall promptly comply with a request to inspect, examine, copy, or provide a copy of a government record. If the custodian is unable to comply with a request for access, the custodian shall indicate the specific basis therefor on the request form and promptly return it to the requestor. The custodian shall sign and date the form and provide the requestor with a copy thereof. If the custodian of a government record asserts that part of a particular record is exempt from public access pursuant to P.L.1963, c.73 (C.47:1A-1 et seq.) as amended and supplemented, the custodian shall delete or excise from a copy of the record that portion which the custodian asserts is exempt from access and shall promptly permit access to the remainder of the record. If the government record requested is temporarily unavailable because it is in use or in storage, the custodian shall so advise the requestor and shall make arrangements to

> promptly make available a copy of the record. If a request for access to a government record would substantially disrupt agency operations, <u>the custodian may deny access to the record after attempting to reach a reasonable solution with the requestor that accommodates the interests of the requestor and the agency</u>.

> [<u>N.J.S.A.</u> 47:1A-5(g) (emphasis added).]

In our view, the fact-sensitive approach employed by the trial court here authorizes the custodian to unilaterally determine what sections of an indisputably public document falls within the scope of a request, and thereafter deny access to that record without "attempting to reach a reasonable solution with the requestor that accommodates the interests of the requestor and the agency." <u>Ibid.</u> We discern no legal basis to expand the custodian's role beyond what the Legislature specifically described in <u>N.J.S.A.</u> 47:1A-5(g).

The public's right of access is further undermined by shifting the burden to the requestor to explain or justify with greater specificity than the law requires the need to copy and examine a public record. Shifting the burden to the requestor to make a follow-up request, as suggested by the trial court here, imposes a bureaucratic hurdle that runs counter to our State's strong public policy favoring "the prompt disclosure of government records." <u>Mason v. City of Hoboken</u>, 196 <u>N.J.</u> 51, 65 (2008); <u>N.J.S.A.</u> 47:1A-1.

The DCJ does not dispute that the documents requested by the ACLU are "government records" as defined in <u>N.J.S.A.</u> 47:1A-1.1. A government agency's policy to restrict the public's right of access to "government records" under OPRA must be supported by one or more of the twenty-one categories of information recognized in <u>N.J.S.A.</u> 47:1A-1, or by establishing, under the common law balancing test established in <u>Nero v. Hyland</u>, 76 <u>N.J.</u> 213, 223-24 (1978), that the public interest for confidentiality outweighs the private right of access. <u>N.J.S.A.</u> 47:1A-9; <u>Bergen Cty. Improvement Auth. v. N. Jersey Media Group, Inc.</u>, 370 <u>N.J. Super.</u> 504, 517 (App. Div.), <u>certif. denied</u>, 182 <u>N.J.</u> 143 (2004). Absent establishing such a showing, a citizen's right of access is unfettered. <u>Courier News</u>, <u>supra</u>, 358 <u>N.J. Super.</u> at 383.[2]

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[2] Because we have decided this case based exclusively on statutory grounds under OPRA, we need not and specifically do not reach the ACLU's alternative arguments based on the common law right of access.