**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4434-16T3

IN THE MATTER OF
THE ESTATE OF EDWARD
J. VALENTINE, SR.

_____

Argued April 23, 2018 — Decided June 27, 2018

Before Judges Ostrer and Rose.

On appeal from Superior Court of New Jersey,
Chancery Division, Bergen County, Docket No.
P-000041-17.

Clara S. Licata argued the cause for appellant
(The Law Office of Clara S. Licata, attorneys;
Clara S. Licata, on the briefs).

Brian J. Halligan argued the cause for
respondent (Crawford & Halligan, attorneys;
Brian J. Halligan, on the brief).

PER CURIAM

In this probate matter, Eileen Valentine, a daughter of

decedent Edward J. Valentine, Sr., appeals from a May 4, 2017

order granting the executor's application to prepare the

decedent's house for sale, and dismissing her counterclaim to

purchase the house.  Eileen[1] also claims the trial court erred in summarily granting the executor's order to show cause without holding a hearing.  For the reasons that follow, we affirm.

## I.

We derive the salient facts from the record.  Having died testate in December 2011, decedent was survived by five adult children with his predeceased wife:  John P. Valentine, Anne Valentine, Edward J. Valentine, Jr., Mary Catherine Jasper, and Eileen.  At the time of his death, Edward Sr. resided in the family home in Waldwick.

In January 2012, decedent's Last Will and Testament was admitted to probate.  After providing for the payment of debts, funeral expenses and taxes, decedent divided his "residuary estate" among his five children as follows:  fifteen percent to John; twenty percent to Anne; fifteen percent to Edward, Jr; twenty-five percent to Mary Catherine and twenty-five percent to Eileen.  With respect to Eileen's bequest, decedent further directed

> that a portion of her said bequest shall consist of the devise of my house, realty, and furniture and furnishings in my said house . . . [in] Waldwick . . . the value of which shall be credited toward her said bequest.

---

[1] Because the interested parties bear the same last name, we use first names after their full names have been identified.  We mean no disrespect in doing so.

A-4434-16T3

> In the unlikely event that my total net estate shall, at the time of my death, be inadequate to enable my said daughter, EILEEN A. VALENTINE, to receive this property as a portion of her 25% bequest, then I direct that this realty be sold on the open market and the proceeds distributed among my children in the percentages indicated. However, my said daughter shall be given the option and opportunity to purchase said property, as a right of first refusal, before it is conveyed to any third party.

At the time of decedent's death, the estimated net value of the probate estate was $430,396 including the family home, which then appraised for $182,500. Because Eileen's bequest was twenty-five percent of the residuary estate, her share was $107,599.

After decedent's death, Eileen's siblings permitted her to reside in the family home until it was sold, provided she paid expenses, insurance, and property taxes. In Fall 2015, after several siblings requested sale of the family home, Eileen failed to pay the fourth-quarter property taxes. On October 1, 2016, Eileen voluntarily vacated the home, but did not remove all of her personal property. Despite repeated requests, she failed to give the executor a key to the residence.

Accordingly, in January 2017, the executor commenced the present summary action, seeking relief that would enable him to sell the family home. In his verified complaint, the executor sought sale of the home, claiming:

> Since the value of the total net estate is inadequate to both meet the percentage bequest to Eileen and give the other children their respective percentage shares of the net estate, it is necessary that the house be sold and that the net proceeds be distributed to the children according to the percentages set forth in the will.

Eileen filed an answer and counterclaim,[2] contending she told the executor shortly after her father's death that she wanted to purchase the family home, but the sale was "stonewalled" by most of her siblings. She contends the executor misinterpreted the provision of the Will devising the family home. In particular, she argues "total net estate" includes probate and non-probate assets, which would have qualified her to purchase the house outright at the appraised value.

In a cogent written statement of reasons, the trial judge granted the relief sought by the executor, finding "there [were] no genuine issues of material fact prohibiting final judgment." In doing so, he found the Will explicitly authorizes the executor to sell the family home because the total net estate was inadequate to allow Eileen to receive the house as her share. The judge also denied Eileen's request for equitable relief because she waited

---

[2] Pursuant to Rule 4:67-4(a), leave of court is necessary to file a counterclaim. Although Eileen did not request leave to file a counterclaim, the trial court considered her pleading.

more than five years to attempt to purchase the home. This appeal followed.

On appeal, Eileen argues there were disputed issues of material fact that warranted a plenary hearing. She further contends the judge erred in excluding non-probate property from the "total net estate" provision in the Will. In particular, she claims she should have received the house because her total bequest, including probate and non-probate property, was adequate to cover the appraised value of the house. As support, Eileen contends the Will's scrivener agreed with her interpretation. We disagree.

## II.

We will not disturb the factual findings and legal conclusions of a trial judge unless we are convinced that those findings and conclusions "are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Tractenberg v. Twp. of W. Orange, 416 N.J. Super. 354, 365 (App. Div. 2010) (quoting Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484 (1974)). "However, '[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference.'" Ibid. (quoting Manalapan

Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)) (alteration in original).

Rule 4:83-1 designates that "all actions in the Superior Court, Chancery Division, Probate Part, shall be brought in a summary manner by the filing of a complaint and issuance of an order to show cause pursuant to [Rule] 4:67." Consequently, probate matters are specifically subject to Rules governing expedited summary actions when in the trial court. See Courier News v. Hunterdon Cty. Prosecutor's Office, 358 N.J. Super. 373, 378 (App. Div. 2003).

Actions brought in a "summary manner" are distinguishable from summary judgment actions because in a summary action, the court makes findings of fact and accords no favorable inferences to the action's opponent. O'Connell v. N.J. Mfrs. Ins. Co., 306 N.J. Super. 166, 172 (App. Div. 1997). If the court is "satisfied with the sufficiency of the application, [it] shall order defendant to show cause why final judgment should not be rendered for the relief sought." Courier News, 358 N.J. Super. at 378 (alteration in original) (quoting R. 4:67-2(a)). Furthermore, summary actions are specifically designed to be expeditious and avoid plenary hearings. Pursuant to Rule 4:67-5,

> The court shall try the action on the return day, or on such short day as it fixes. If . . . the affidavits show palpably that there

is no genuine issue as to any material fact the court may try the action on the pleadings and affidavits, and render final judgment thereon. If any party objects to such a trial and there may be a genuine issue as to a material fact, the court shall hear the evidence as to those matters which may be genuinely in issue, and render final judgment. At the hearing or on motion at any stage of the action, the court for good cause shown may order the action to proceed as in a plenary action . . . .

Consequently, judges sitting in probate on summary proceedings have broad discretion in determining the genuine nature of the factual dispute and whether the issue merits a plenary hearing. See Tractenberg, 416 N.J. Super. at 365 (holding that a judge properly utilized a summary proceeding to determine whether facts supported the claim that the attorney-client privilege or attorney work product doctrine protected the release of certain documents under the Open Public Records Act).

Here, we find the trial judge reasonably exercised his discretion in determining a plenary hearing was not warranted, and dismissing the counterclaim. Importantly, the parties do not dispute the value of the probate estate or the date-of-death value of the family home. We, therefore, agree that no genuine issues as to any material facts were raised here and, as such, a plenary hearing was not necessary. See R. 4:67-5.

We also disagree with Eileen that discovery and a plenary hearing are necessary to determine decedent's intent concerning her share of the estate and the meaning of "total net estate." Plenary hearings are required when there are "contested issues of material fact on the basis of conflicting affidavits." Conforti v. Guliadis, 128 N.J. 318, 322-23 (1992). Here, Eileen's claim that the scrivener said he agreed with her interpretation of the Will fails because she did not provide a supporting affidavit attesting to his alleged representation, and thus constitutes inadmissible hearsay.

Although Eileen did not specifically raise the doctrine of probable intent, we have recently determined that a trial court may look beyond the plain language of a trust or will and consider extrinsic evidence of intent to determine whether an ambiguity exists. In re Trust of Nelson, ___ N.J. Super. ___, ___ (App. Div. 2018) (slip op. at 13). Here, however, Eileen fails to present any competent extrinsic evidence to contradict the trial court's interpretation of decedent's Will.

Specifically, in the first paragraph, decedent directed payment of his debts and funeral expenses. In the second paragraph, he directed payment of taxes from his residuary estate. This paragraph specifically includes property in his "gross

estate, whether such property passes under this Will or otherwise."
(Emphasis added).

Conversely, in the third paragraph, decedent explicitly referenced his "total net estate" in determining whether Eileen should receive the family home as part of her twenty-five percent bequest. (Emphasis added). Clearly, unless Eileen exercised her right of first refusal, the terms of the Will dictated sale of the home to a third party where, as here, the value of the residence exceeded Eileen's twenty-five percent share.

Further eroding Eileen's argument that "total net estate" includes non-probate property, is the "Estate Summary" listing decedent's probate and non-probate property. This summary indicates that Eileen received, as non-probate property, either 20% or 35% of decedent's individual retirement account; 100% of a Bank of America account; and 100% of a Wells Fargo account. Eileen's twenty-five percent bequest in the Will is separate and apart from those non-probate assets.

Eileen also contends the trial court improperly invoked the doctrine of laches in dismissing her counterclaim. Specifically, she alleges that "although the [e]xecutor interposed a boilerplate affirmative defense of laches, his counsel did not make a laches argument to the court [during oral argument]." Eileen's argument lacks merit.

A-4434-16T3

As Eileen concedes, procedurally, the executor pled laches as an affirmative defense. R. 4:5-4. Substantively, the doctrine of laches bars a party seeking to enforce a known right on the grounds that the party "engage[d] in an inexcusable and unexplained delay in exercising that right to the prejudice of the other party." Fox v. Millman, 210 N.J. 401, 418 (2012) (quoting Knorr v. Smeal, 178 N.J. 169, 180-81 (2003)). "Laches may only be enforced when the delaying party had sufficient opportunity to assert the right in the proper forum and the prejudiced party acted in good faith believing that the right had been abandoned." Knorr, 178 N.J. at 181 (citation omitted). "The key factors to be considered in deciding whether to apply the doctrine are the length of the delay, the reasons for the delay, and the 'changing conditions of either or both parties during the delay.'" Ibid. (quoting Lavin v. Bd. of Educ., 90 N.J. 145, 152 (1982)). "[W]hether laches should be applied depends upon the facts of the particular case and is a matter within the sound discretion of the trial court." Mancini v. Twp. of Teaneck, 179 N.J. 425, 436 (2004) (emphasis added) (internal citation omitted).

Here, the trial judge properly found, as a court of equity, that it "[could] not aid [Eileen's] more than five-year long delay in making her claim." Rather, he determined, "The appropriate time for [Eileen] to purchase this Property has long passed, and

10

the other beneficiaries, [Eileen's] brothers and sisters, are entitled to their share of the Estate." As the judge aptly observed, Eileen's "claim runs afoul of the well-established equitable maxim, 'Equity aids the vigilant, not those who sleep on their rights.'" (citations omitted). We agree. See also Kaye v. Rosefielde, 223 N.J. 218, 231 (2015) ("As a general rule, courts exercising their equitable powers are charged with formulating fair and practical remedies appropriate to the specific dispute."). (citations omitted).

We, therefore, conclude the record contains substantial, credible evidence to support the findings of the trial judge and we perceive no basis to disturb them. We find insufficient merit in Eileen's remaining arguments to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4434-16T3