**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3235-23

IN THE MATTER OF THE
ESTATE OF GEORGE BAIRD
CLEMENTS, JR., deceased.

_____

Submitted April 22, 2026 – Decided May 12, 2026

Before Judges Paganelli and Vanek.

On appeal from the Superior Court of New Jersey, Chancery Division, Cape May County, Docket No. P-000084-22.

Antonio J. Toto, Esq., LLC, attorney for appellant Nancy J. Clements (Antonio J. Toto, on the brief).

Archer & Greiner, PC, attorneys for respondent Susanne Snock (Steven K. Mignogna and Melissa Osorio Dibble, on the brief).

PER CURIAM

Defendant Nancy Jane Clements appeals following the entry of a May 15, 2024 final judgment that memorialized the parties' settlement of the litigation, except for the ownership of 605 Chelsea Place, Ocean City, New Jersey (the Ocean City House). On August 2, 2022, the court ordered that the First

Amended and Restated Revocable Living Trust of George B. Clements, Jr. and Anne Marie Clements[1] owned the Ocean City House and, pursuant to the terms of the Trust, title passed to their children, plaintiff Susanne Snock and Jeannine Corse. On December 12, 2022, the court denied Nancy's motion for reconsideration of the August order. We affirm the August and December orders.

On May 11, 2022, Snock filed a verified complaint naming Nancy, George's second wife, in her individual capacity and as the executor of George's estate, as defendant. She alleged that in 1987, George and Anne Marie created the Clements Revocable Living Trust. Further, in October 2003, George and Anne Marie transferred the Ocean City House into the Trust. A deed memorializing the transfer into the Trust was recorded with the Cape May County Clerk. Snock alleged that in 2004, George and Anne Marie executed the First Amended and Restated Revocable Living Trust. We refer to the 1987 and 2003 trust documents collectively as "the Trust."

Snock contended Anne Marie died in 2006. She alleged because of Anne Marie's death, "the Trust could not be amended or revoked, especially as to

---

[1] Because Nancy, George, and Anne Marie share the Clements surname, we use their first names. We intend no disrespect.

A-3235-23

[Anne Marie's] share of the Trust assets." Further, because of George's death in 2021, the Trust could not be amended or revoked, and Snock became the trustee. Snock alleged she and Corse were the named beneficiaries of the Trust.

Snock alleged Nancy resided in the Ocean City House and had "asserted that the house is hers and hers alone. In fact, she has freely used the house, rented it out, and enjoyed the benefits of the house and the rental income."

Snock sought to enforce the terms of the Trust and have title to the Ocean City House transferred to her and Corse. The court executed the order to show cause. In her answer, Nancy asserted the Trust and the deed spoke for themselves and the Ocean City House "should transfer to her pursuant to [George]'s estate plan."

On July 26, 2022, the court heard the parties' arguments. In a decision placed on the record, the court stated it considered the verified complaint, the parties' submittals, and arguments. The court recited the standard governing summary actions as set forth in Rule 4:67-5 and Shaw v. Shaw, 138 N.J. Super. 436 (App. Div. 1976). The court granted the summary action because it concluded "the interpretation of both the [T]rust and the deed make this case ripe for summary disposition pursuant to N.J.S.A. 3B:3-33.1."

The court found in June 1987, George and Anne Marie created the Trust. The court stated the Trust was funded by "investment[] accounts, real estate, stock, retirement accounts, and life insurance policies." The court found in October 2003, George and Anne Marie transferred the Ocean City House into the Trust.

The court found George and Anne Marie amended and restated the Trust in February 2004 "to provide that upon the death or incapacity of either of the settlors the [T]rust may not be amended or revoked by any person with respect to such settlor's share." The court found George executed a will providing for his estate to pass into the Trust. Further, the court found "[t]he [T]rust provides that upon the death of [George] and Anne Marie[,] the assets of the [T]rust are to pass in equal shares to [Snock and Corse] with [Snock] serving as successor trustee."

The court noted that Anne Marie died in 2006. Further, that George had remarried and that Nancy was his second wife. The court found that "[o]n October 29, 2021, approximately ten days before his death, [George] executed a new will providing that the entire residue of [his] estate was to pass to" Nancy.

The court found George's and Anne Marie's "intentions were expressed in the plain language of the [T]rust and deed." Further, "[t]he [T]rust provides that

4

the settlors' shares become irrevocable upon their respective deaths."  In addition, after the deaths of George and Anne Marie, "any assets of the [T]rust shall be divided into equal shares and distributed outright to" Snock and Corse because they had "reached the age of 30."

The court found it was "irrefutabl[e]" that George and Anne Marie transferred title of the Ocean City House into the Trust.  The court "place[d] significant weight on the fact that a deed was recorded with the Cape May County Clerk and is still a matter of public record."

The court noted the "parties agree[d] that [George] had the power to revoke his portion of the [T]rust."  The court determined, "[h]owever, clearly that the mechanism, which is set forth in the [T]rust, for revocation was not followed."  The court "focus[ed]" on the Trust language that provides "'the power of revocation shall be exercised by written notice delivered by the revoking settlor during his or her lifetime to the other settlor and to the trustee,'" and found it was "undisputed that there is no document that fulfills the power to revoke during [George]'s lifetime."

The court rejected "in its entirety" Nancy's argument that George's 2021 will "served as revocation."  Further, the court considered verbal assertions regarding George "going to different attorneys for estate purposes and that

5

would somehow indicate a desire by [George] to revoke the [T]rust, but . . . there's . . . no real[] conflicting evidence at this point other than argument on that issue."

The August 2, 2022 order provides, in part:

> [T]he Trust owns the . . . "Ocean City House"[]. . . . Snock is the trustee of the Trust. Under the terms of the Trust, title to the Ocean City House passes to . . . Snock and . . . Corse, individually in equal, undivided shares, as tenants in common, free of any claim by . . . Nancy . . . .

In support of her motion for reconsideration regarding the August order, Nancy provided a certification. She claimed in their nearly two years of marriage, "George had sought to amend his estate plan so that his estate, and the [Ocean City House], would transfer to [her] upon his death." She stated George met with an attorney "to assist him with revising his estate plan and for assistance in terminating the Trust."

Nancy attached correspondence between George and the attorney to her certification. In a September 15, 2021 letter to the attorney, George stated he was "requesting an appointment to . . . remove [his] name from the Trust." There is no statement within the certification explaining why the document was not previously submitted or if the document was newly discovered. The motion for reconsideration was denied.

A-3235-23

On appeal Nancy argues the court erred because George "revoked his Trust" in a letter to an attorney. In addition, Nancy asserts George "believed after [Anne Marie] died, all assets went to him and, therefore, there was no need for an [i]rrevocable [t]rust." Further, Nancy contends more time for discovery was needed so she could depose the attorney and George's accountant to ascertain George's intentions.

A court is permitted to "proceed in a summary manner" when "permitted by rule or by statute." R. 4:67-1(a). Under N.J.S.A. 3B:2-2, "[t]he Superior Court shall have full authority to hear and determine all controversies respecting wills, trusts and estates, and full authority over the accounts of fiduciaries, and also authority over all other matters and things as are submitted to its determination under this title." Moreover, "[t]he Superior Court, in any proceeding by or against fiduciaries or other persons, may proceed in a summary manner." N.J.S.A. 3B:2-4. See also R. 4:83-1 ("Unless otherwise specified, all actions in the Superior Court, Chancery Division, Probate Part, shall be brought in a summary manner . . . .").

"If the action is brought in a summary manner pursuant to R[ule] 4:67-1(a), the complaint, verified by affidavit made pursuant to R[ule] 1:6-6, may be presented to the court ex parte . . . ." R. 4:67-2(a). "The court, if satisfied

A-3235-23

with the sufficiency of the application, shall order the defendant to show cause why final judgment should not be rendered for the relief sought." Ibid.

"The court shall try the action on the return day, or on such short day as it fixes. If . . . the affidavits show palpably that there is no genuine issue as to any material fact, the court may try the action on the pleadings and affidavits, and render final judgment thereon." R. 4:67-5.

"A summary action is not a summary judgment motion." Courier News v. Hunterdon Cnty. Prosecutor's Off., 358 N.J. Super. 373, 378 (App. Div. 2003). In a summary proceeding, the party opposing judgment "is not entitled to favorable inferences such as those afforded to the respondent in a summary judgment motion." Id. at 379.

On appeal from a summary proceeding, a trial judge's factual findings will be upheld as long as they are "supported by adequate, substantial and credible evidence" in the record. Rova Farms Resort v. Invs. Ins. Co., 65 N.J. 474, 484 (1974). "However, we owe no deference to a trial court's interpretation of the law, and review issues of law de novo. We also review mixed questions of law and fact de novo." Cumberland Farms, Inc. v. N.J. Dep't of Env't Prot., 447 N.J. Super. 423, 438 (App. Div. 2016) (citations omitted).

A-3235-23

Under N.J.S.A. 3B:31-12, "[t]he rules of construction that apply in this State to the interpretation of and disposition of property by will also apply as appropriate to the interpretation of the terms of a trust and the disposition of the trust property."[2] A testator's and settlor's intentions, as expressed in their will or trust, "controls the legal effect of [their] dispositions." N.J.S.A. 3B:3-33.1(a)(b). "The court's primary goal in interpreting a trust agreement is to fulfill the settlor's intent." In re Trust of Nelson, 454 N.J. Super. 151, 158 (App. Div. 2018). The New Jersey Supreme Court "has acknowledged that in ascertaining intent, [the] focus really is probable intent." Ibid. (citing Fidelity Union Trust Co. v. Robert, 36 N.J. 561, 564 (1962)). The doctrine of probable intent "does not permit a court to 'conjure up an interpretation or derive a missing testamentary provision out of whole cloth.'" Ibid. (quoting Engle v. Siegel, 74 N.J. 287, 291 (1977)).

"Reconsideration is a matter to be exercised in the trial court's sound discretion." Capital Fin. Co. of Del. Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008). Reconsideration only applies to a "narrow corridor"

---

[2] The Trust states: "This Trust has been accepted by the Trustee in the Commonwealth of Pennsylvania, and its validity, construction and all rights thereunder shall be governed by the laws of that state." Nevertheless, because the trial court and the parties applied New Jersey law, we do so as well.

A-3235-23

of cases. Ibid. (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)). "[A] litigant must initially demonstrate that the [c]ourt acted in an arbitrary, capricious, or unreasonable manner, before the [c]ourt should engage in the actual reconsideration process." D'Atria, 242 N.J. Super. at 401. When a litigant "bring[s] new or additional information to the [c]ourt's attention which it could not have provided on the first application, the [c]ourt should, in the interest of justice (and in the exercise of sound discretion), consider the evidence." Ibid.

We start with the structure of the Trust. Importantly, George and Anne Marie were the settlors and trustees of the Trust. Regarding the property in the Trust, they "declare[d] that regardless of how such property was acquired . . . such property shall for all purposes of the Trust be equally divided into two separate shares, one for each Settlor." Further, "[b]y making any such transfer to the Trustee, the Settlors have indicated their intent . . . to establish two separate, but equal, shares of this Trust, one for each Settlor."

The Trust describes how it would operate during the Settlors' lifetimes. In part, during a Settlor's lifetime, "the Trust may be revoked in whole or in part." Further, "[t]he power of revocation shall be exercised by written notice delivered by the Settlor(s) . . . to the Trustee." When a revocation occurs, "the revoked

portion of the Trust Estate shall be transferred to the Settlor(s) as his/her/their separate property as if the Trust had not been created."

Once the first Settlor died, the "Trust may not be amended or revoked by any person <u>with respect to such Settlor's share</u>." (Emphasis added). "Upon the death of the [S]urviving Settlor," their "debts, expenses of last illness and burial expenses" were to be paid. Once "all children of a Settlor have attained age of twenty-one (21) . . . the Trustee shall then divide the balance of the Surviving Settlor's share, . . . into separate, individual shares for each of the beneficiaries." The Trust named Snock as the first successor trustee and named Snock and Corse as the beneficiaries in equal shares.

Next, we apply the structure of the Trust to the undisputed facts in the record. We begin with Anne Marie's death in 2006. As of Anne Marie's death, the Trust could not, "be amended or revoked by any person with respect" to her share. Thus, Anne Marie's share and interest in the Ocean City House could not be disturbed.

In George's letter to the attorney, submitted to support his motion for reconsideration, he "request[ed] an appointment to . . . remove [his] name from the Trust." This letter does not satisfy the "power of revocation" required by the Trust. Instead, at best, the letter indicates George sought an appointment with

that attorney to discuss effectuating the removal. However, there is no evidence that he ever actually effectuated the removal or revocation. Indeed, the Ocean City House remained titled in the name of the Trust.

Next, we have George's death in 2021. Upon George's death, the Trust could not, "be amended or revoked by any person with respect" to his share. Thus, George's share and interest in the Ocean City House could not be disturbed.

Lastly, upon Anne Marie's and George's deaths, and with both Snock and Corse having attained the age of twenty-one, the Trustee, Snock, was required to divide the Ocean City House into equal shares to herself and Corse. This is precisely what the August order provides.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division